*Decisions will be entered under Rule 155.*

JERRY D. THOMPSON, ET AL., [1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6191-84, 46843-86,          Filed March 16, 1989.
48350-86.

---

[24]T.C. Memo. 1983-659.

[1]This case has been consolidated with the cases of St. Augustine Trawlers, Inc., docket No. 46843-86 and Velton J. O'Neal and Pearl W. O'Neal, docket No. 48350-86.

*Kenneth G. Anderson,* for the petitioner in docket No. 6191-84.

*Keith H. Johnson* and *James D. O'Donnell,* for the petitioners in docket Nos. 46843-86 and 48350-86.

*Avery B. Cousins III,* for the respondent.

## OPINION

PARKER, *Judge:* This case is before the Court on the motion of petitioner St. Augustine Trawlers, Inc. and petitioners Velton J. O'Neal and Pearl W. O'Neal for an order modifying the exclusion of witnesses. Petitioner Jerry D. Thompson opposes their motion. The issues to be decided are whether the Court's order under Rule 145[2] excluding witnesses from the courtroom has been violated and, if so, the appropriate sanction, if any, to be imposed for that violation.

This is a fraud case involving a corporate taxpayer and two individual taxpayers who were the sole shareholders of the corporation. At issue is unreported diverted cash income purportedly earned by the corporate taxpayer, St. Augustine Trawlers, and not reported on its corporate returns, which diverted cash allegedly constituted construc-

---

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

tive dividends to the two shareholders, Thompson and O'Neal, who purportedly received the diverted cash and also failed to report it on their individual tax returns. This diverted income principally arose from cash payments made by various drug traffickers for boats, supplies, and maintenance and repair work performed by St. Augustine Trawlers (hereinafter Trawlers or the shipyard). There are issues as to the amount of such unreported diverted cash income each year and the fraudulent intent of each taxpayer each year. There is a further issue as to how much of the unreported diverted cash was received by each of the shareholders, with Thompson arguing it was a 50-50 split and O'Neal arguing that he received only some $35,000 of unreported cash one year. Thompson is no longer a shareholder, and O'Neal is now the sole shareholder of Trawlers. There are conflicting positions and interests as between Trawlers and O'Neal, on the one hand, and Thompson, on the other hand. The core issue to be decided by the Court in this fraud case is one of credibility—principally the credibility of Jerry Thompson as against Velton O'Neal. However, the credibility of other witnesses is also in dispute.

In addition to the unreported income issues, facts were brought out at the trial in regard to the activities of all three taxpayers in the practice of so-called "inflated contracts" or "double contracts." Under this practice, after St. Augustine Trawlers had built a boat for a regular customer, it provided that customer with a phony inflated contract which the customer then took to the bank to obtain greater financing from the bank than it could otherwise obtain. In one instance, a contract for a drydock for Boston Harbor was inflated more than 100 percent (from the actual price of $425,000 to the inflated phony price of $895,000) and the phony contract price was used to obtain financing through a Federal agency, Housing and Urban Development (HUD). However, respondent no longer contends that the phony inflated contracts produced any unreported income to St. Augustine Trawlers, and thus the double contracts are not part of the unreported diverted cash income involved in this tax case. The Federal Bureau of Investigation (FBI) investigation of various East Coast shipyards (including Trawlers) involved in the double-contracts practice paralleled the

entirely separate Internal Revenue Service audit of Trawlers. Apparently, there is pending in the U.S. District Court in Boston a lawsuit between HUD and Trawlers.

The trial of this consolidated fraud case commenced in Jacksonville, Florida, on January 17, 1989, such trial having been calendared by an order dated August 24, 1988. Pursuant to the Court's standing pretrial order attached to that order, the parties submitted their trial memoranda, which, among other things, listed the prospective witnesses to be called by each party. With some duplication of names, respondent listed 27 prospective witnesses, petitioner Thompson listed 29, and petitioners Trawlers and O'Neal listed 13. Among the witnesses listed by petitioners Trawlers and O'Neal, but not listed by respondent or petitioner Thompson, was one Fred Kent, identified as follows:

9. Fred Kent, *Attorney at Law*—Mr. Kent represented Mr. O'Neal in ousting Smeaton and Luedke after Mr. O'Neal became aware of their looting and attempts to liquidate all liquid assets. Mr. Kent also represented Petitioner and Mr. O'Neal in various lawsuits against Jerry Thompson. Mr. Kent will testify as to his investigation and knowledge about the Smeaton-Luedke matter along with his investigation/knowledge about Jerry Thompson's unauthorized and improper activities.

At the commencement of the trial on January 17, 1989, respondent's counsel moved to exclude witnesses under Rule 145, Tax Court Rules of Practice and Procedure. None of the other parties objected to that motion. Mr. Thompson and Mr. O'Neal, being parties who are natural persons, were of course permitted to remain in the courtroom throughout the trial. Rule 145(a)(1). Counsel for Trawlers elected to have Mrs. Virginia Weatherly, the corporation's bookkeeper, remain in the courtroom as "an officer or employee of a party which is not a natural person designated as its representative by its attorney." Rule 145(a)(2). Respondent's counsel elected to have Mr. Willard Dillon, the Revenue Agent, as its advisor or "a person whose presence is shown by a party to be essential to the presentation of his cause" (Rule 145(a)(3)), and the Court permitted him to remain in the courtroom throughout the trial. None of the counsel requested that any other person be permitted to remain in the courtroom during the trial. No other witnesses being

present in the courtroom at the commencement of the trial, the Court instructed counsel as follows:

> * * * counsel will have to advise the witnesses they are not to discuss the case at any time during the trial with each other or with anyone other than counsel. They can talk to counsel, but they are not to discuss the case with each other. * * * And they can only talk to counsel about their own testimony, not—find out what someone else testified to.

Mrs. Weatherly was the first witness called by respondent, just for identification of some corporate records. Thereafter, she remained in the courtroom until recalled to testify on the seventh and eighth days of the trial. Her testimony is important as to the handling of cash on the corporate books and records. Her testimony may well be critical as to the events surrounding the $35,500 cash amount that petitioner O'Neal admits he received and failed to report. There is a serious question as to whether or not the $35,500 item was an after-the-fact fabrication devised by petitioner O'Neal for purposes of his plea bargain agreement in his criminal perjury case. Mrs. Weatherly also testified at the sentencing hearing in that criminal case.

In any event, the Jacksonville, Florida, trial session, originally scheduled for 4 days, lasted 8 days. Seven days were devoted to respondent's case-in-chief, because respondent has the burden of proof on most issues in the case, but most importantly because the three taxpayers in effect put on their cases through their cross-examination. Consequently, cross-examination by counsel for the three taxpayers was extremely wide ranging and comprehensive for every witness. The questions posed by counsel for the three taxpayers, regardless of the particular witness' response(s) thereto, essentially provide a road map of that party's theory of the case and identify the areas of factual dispute, particularly as between Thompson, on the one hand, and Trawlers and O'Neal, on the other hand. Throughout the 8 days of trial, Mr. Kent was never present at the trial proceedings and was never called to testify. Mr. Kent had never been subpoenaed to testify, and on the eighth day of the trial session he was out of the city handling another legal matter. Neither counsel nor the Court wished Mr. Kent's testimony to be taken by deposition and petitioner Thompson's counsel did not want that testimony to be

taken at the Washington, D.C., trial session. That Washington, D.C., trial session was to be scheduled later to cover a separate, discrete issue, the so-called Meyerhoff issue, which did not involve petitioner Thompson. Accordingly, a suggestion was made, which the Court adopted, that Judge Thomas Wells, who had a regular trial calendar scheduled to commence in Jacksonville, Florida, on February 6, 1989, be requested to hear Mr. Kent's testimony.

At the conclusion of the Jacksonville trial session on January 26, 1989, the Court and the various counsel discussed the nature of the testimony to be elicited from Mr. Kent. The areas to be covered included the matter of "his first knowledge of the $35,500," the negotiation of the sale of Trawlers for $8,000,000, the litigation of Trawlers against Jerry Thompson and the investigation conducted by Mr. Kent in regard thereto, and a certain conversation between Mr. Kent and Mr. Hoover, another witness who had already testified in this trial. The $35,500 item is a significant area of Virginia Weatherly's testimony. The sale of Trawlers and the conversation with Hoover are also areas of significant and conflicting testimony given by Thompson and O'Neal, and by O'Neal and Hoover, respectively. The facts in regard to Trawler's litigation against Jerry Thompson may also be important in this Court's ultimate resolution of certain credibility issues as between O'Neal and Thompson.

Before the January 26, 1989, trial session recessed, respondent's counsel specifically inquired about the Court's exclusion order and its application to Mr. Kent. An extended colloquy ensued:

MR. JOHNSON: Your Honor, I am not sure I understand. Does that mean that we are not permitted to discuss Mr. Hoover's testimony with Mr. Kent?

MR. COUSINS: That would be correct.

THE COURT: Yes. And the Rule was invoked. If I have all the witnesses in the courtroom I tell them before they leave the courtroom that they are not to discuss their testimony with anyone.

MR. JOHNSON: I understand that but I didn't understand that that would also include counsel.

THE COURT: Well, it certainly does. Counsel—

MR. JOHNSON: I am not saying we did it but I am saying—

THE COURT: Well—

MR. COUSINS: Don't do it.

THE COURT: —don't do it.

MR. JOHNSON: Okay. And, of course, this would be a rebuttal matter also, Your Honor. It is an area we didn't anticipate and haven't explored with Mr. Kent before so I would like to have an idea what he would testify to.

\* \* \* \* \* \* \*

THE COURT: I see no reason why he has to be told what another witness has testified to in order to find out what he knows. In fact, that is the whole purpose of the exclusion, is so that we know what—find out what he knows without any possible suggestion coming from knowledge of what other people testified to.

I am not suggesting he would intentionally conform his testimony one way or the other, but that is the purpose of the exclusionary (sic) rule, to prevent any possible contamination of factual witnesses' testimony. [Tr. 2560-2562.]

With the agreement of Judge Wells, the taking of Mr. Kent's testimony was thereafter scheduled for February 8, 1989. However, again counsel for Trawlers and O'Neal failed to have Mr. Kent subpoenaed, and thus he did not appear at the February 8, 1989, trial session. Now, petitioners Trawlers and O'Neal want Mr. Kent's testimony to be taken at the Washington, D.C., trial session of this case now scheduled to commence March 20, 1989. Counsel for petitioner Thompson, of course, objects to his testifying in Washington, D.C., or indeed to his testifying in this case.

It appears that Mr. Kent represents Trawlers in the U.S. Federal District Court in Boston, Massachusetts, in a lawsuit involving HUD. In connection with that HUD matter, Mr. Kent asked counsel for Trawlers and O'Neal for copies of some of the testimony in this Tax Court case, for use in a motion for rehearing or for an appeal in the HUD case. Counsel for petitioners Trawlers and O'Neal, without obtaining permission of the Court, furnished those portions of the transcript including the testimony of John Marcus Thompson (not related to Jerry Thompson), the former financial manager of Trawlers, and of Ida Wheeler, the former sales manager of Trawlers.[3] Thereafter, counsel for

---

[3]Actually, Mr. Kent was at that time furnished two complete volumes of the transcript of the trial of this case, which also included large portions of the cross-examination of Jerry Thompson and the testimony of the assistant U.S. attorney and another witness. At some later time, counsel for petitioners Trawlers and O'Neal "requested" Mr. Kent to confine his review of the transcript solely to persons whose testimony he had sought. Mr. Kent is not under subpoena and this Court cannot order him to do anything.

petitioner Thompson learned of the fact that the testimony had been furnished to Mr. Kent and advised counsel for Trawlers and O'Neal that that action constituted a violation of this Court's sequestration order. Counsel for petitioners Trawlers and O'Neal says that up to that time, it had never occurred to him that his action may have violated the Court's order excluding witnesses. Despite the fact that the matter of the Court's order had then been brought to his attention, counsel for Trawlers and O'Neal, without obtaining the permission of the Court, thereafter proceeded to furnish to Mr. Kent the testimony of George DeAntonis, Trawlers' comptroller during the years at issue, and that of Mrs. Weatherly. That volume of the transcript also included the testimony of the FBI agent. See note 3, *supra.*

Petitioners Trawlers and O'Neal have now filed the present motion for order modifying exclusion of witnesses, in effect now trying nunc pro tunc to get permission to do what they have already done—to disclose testimony of other witnesses despite the Court's exclusion order. Based on the facts recited at length above and our discussion of the applicable law below, we conclude that there has been a clear violation of the Court's Rule 145 order, that the violation of the Court's Rule 145 order was intentional at least as to the testimony of Mr. DeAntonis and Mrs. Weatherly. We further conclude that sanctions should be imposed for these clear and intentional violations of the Court's order, and that the appropriate sanction in this instance is to preclude Mr. Kent from testifying at the further trial session of this case.

Our Rule 145 provides as follows:

RULE 145. EXCLUSION OF PROPOSED WITNESSES

(a) Exclusion: At the request of a party, the Court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This Rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

(b) Contempt: Among other measures which the Court may take in the circumstances, it may punish as for a contempt (i) any witness who remains within hearing of the proceedings after such exclusion has been directed, that fact being noted in the record; and (ii) any person (witness,

counsel, or party) who willfully violates instructions issued by the Court with respect to such exclusion.

Our Rule 145 is virtually identical to rule 615 of the Federal Rules of Evidence.[4]

The purpose of this rule is to prevent witnesses from tailoring their testimony to that of prior witnesses and to minimize altered, uncandid testimony. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1373 (5th Cir. 1981);[5] *Colorado National Bankshares, Inc. v. Commissioner,* 92 T.C. 246 (1989). If a witness is permitted to hear or read the testimony of an opposing witness, the later witness can ascertain the precise points of difference between their testimonies and can shape his own testimony to the advantage of his side of the case. *Weeks Dredging & Contracting, Inc. v. United States,* 11 Cl. Ct. 37, 49 (1986). However, if a witness is permitted to hear or read the testimony of a witness on the same side, this will allow the later witness the opportunity to sharpen his testimony to correspond with the earlier testimony. *Weeks Dredging & Contracting, Inc. v. United States, supra.*

With regard to prospective witnesses, or witnesses who have not yet testified at the trial, the opportunity to shape testimony is as great with a witness who reads trial testimony as with one who hears the testimony in open court. *Miller v. Universal City Studios, Inc., supra.* In fact, the Fifth Circuit pointed out that the harm may be even more pronounced with a witness who reads trial transcript than with one who hears the testimony in open court, since the former witness need not rely on his memory of the

---

[4]Rule 615 of the Federal Rules of Evidence reads as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Most of the reported cases have arisen under rule 615, and the exclusion order is frequently referred to as a sequestration order. We use that term interchangeably with "exclusion order" in this opinion.

[5]This case was decided by the Fifth Circuit on July 23, 1981. Any case arising in the Fifth Circuit before the organization of the Eleventh Circuit on Oct. 1, 1981, is considered binding precedent on the Eleventh Circuit until such time as the Eleventh Circuit sitting en banc shall deviate therefrom. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). Any appeal in the instant case would lie to the U.S. Court of Appeals for the Eleventh Circuit.

testimony but can thoroughly review and study the transcript in formulating his own testimony. *Miller v. Universal City Studios, Inc., supra.*

The opportunities for a witness to alter or shape his testimony to prior testimony are greater in the case of a fact witness as opposed to an expert witness. In *Colorado National Bankshares, Inc. v. Commissioner, supra,* this Court considered an expert witness under an exclusion order who was given an exhibit prepared by another expert during that expert's testimony. The Court declined to strike his testimony, in part because he was an expert rather than a fact witness. This Court noted that an expert witness stating an opinion based on his expertise is less likely to alter his testimony "in the sense of changing his story or changing facts" than a fact witness. *Colorado National Bankshares, Inc. v. Commissioner, supra,* 92 T.C. at page 253.

If a violation of the exclusion order occurs, the Court, in its discretion, may impose sanctions. Rule 145(b); *Colorado National Bankshares, Inc. v. Commissioner, supra.* Such sanctions may include, among other things, a citation for contempt, thorough cross-examination before the jury on the facts of the violation, commenting on noncompliance with the rule to reflect on the witness' credibility, striking a witness' testimony, or refusing to let the witness testify. *United States v. Blasco,* 702 F.2d 1315, 1327 (11th Cir. 1983); *Colorado National Bankshares, Inc. v. Commissioner, supra,* 92 T.C. at pages 251-252. Striking testimony is considered a serious sanction that is appropriate, particularly in a criminal case, only when the party against whom the order was violated has suffered actual prejudice and there has been connivance by the witness or counsel to violate the rule. *United States v. Jimenez,* 780 F.2d 975, 980 (11th Cir. 1986); *United States v. Blasco, supra.* In addition, other courts have determined that in order to sanction a particular litigant for a witness' violation of the order, the violation must have occurred with the consent, connivance, procurement, or knowledge of the litigant or his counsel. *United States v. Torbert,* 496 F.2d 154, 158 (9th Cir. 1974);[6]

---

[6]The Ninth Circuit determined that it is ordinarily an abuse of discretion for a trial judge to disqualify a witness from testifying unless the defendant or his counsel have somehow

*Taylor v. United States,* 388 F.2d 786, 788 (9th Cir. 1967); *United States v. Schaefer,* 299 F.2d 625, 631 (7th Cir. 1962), cert. denied 370 U.S. 917 (1962).

In the case of a prospective witness, the decision as to whether to preclude a witness from testifying is somewhat different from the situation in which a witness has already testified where the trial judge must decide whether to strike testimony already in the record. When a witness has violated the sequestration rule, it is within the discretion of the trial judge to determine whether or not this witness will be permitted to testify. *Reeves v. International Telephone & Telegraph Corp.,* 616 F.2d 1342, 1355 (5th Cir. 1980); *United States v. Willis,* 525 F.2d 657, 660 (5th Cir. 1976). When the witness has not yet testified, it is more difficult to determine if the party against whom the order was violated will suffer actual prejudice. Instead of relying on actual prejudice to the other party, the courts have instead examined whether the actions of the party who violated the rule were deliberate and how extensive the testimony was that was revealed to the witness. In *Weeks Dredging & Contracting, Inc. v. United States, supra,* the Claims Court excluded witnesses from testifying based on the repeated instances in which extensive testimony was revealed to them. In *Reeves v. International Telephone & Telegraph Corp., supra,* the Fifth Circuit determined that a 3-hour preparatory session by the attorneys with the witnesses constituted a direct and flagrant violation of a previously entered sequestration and separation order and prohibited testimony from the witnesses who attended that session.

In the instant case, there were clear and intentional violations of the Rule 145 order to exclude witnesses from the courtroom. As we noted in *Colorado National Bankshares, Inc. v. Commissioner, supra,* 92 T.C. at pages 249-250, "In addition to exclusion of witnesses, the recounting of prior witness testimony to another witness before he testifies is prohibited once Rule 145 is invoked." This

---

cooperated in the violation of the order. *United States v. Torbert,* 496 F.2d 154, 158 (9th Cir. 1974). That case, like so many involved in violations of sequestration orders, was a criminal case. However, the rule in that case was based on the availability of alternative sanctions to enforce the sequestration order and the constitutionally based right of a defendant in a criminal case to have relevant testimony in his favor. There, however, because the defendant himself violated the order, the court excluded his witness' testimony.

Court, while perhaps stating the obvious, gave similar instructions to counsel in this case just before the trial commenced. Again at the conclusion of the Jacksonville trial session, the Court gave such instructions in specific reference to the prospective witness, Mr. Kent. Nevertheless, counsel for petitioners Trawlers and O'Neal gave Mr. Kent the transcript of the testimony of four witnesses who had already testified at the trial.[7]

Having a prospective witness read the transcript of other witnesses' testimony undermines the purpose of the exclusion rule more than having a prospective witness hear the testimony in the courtroom and have to rely on his own recollection of that testimony. *Miller v. Universal City Studios, Inc., supra,* 650 F.2d at 1373. The damage may be even more serious in this case, where that prospective witness is himself a practicing attorney, in this instance, an attorney currently representing the corporate taxpayer in another lawsuit.

We have concluded that the appropriate sanction to vindicate this Court's authority, to protect the record in this case, and to fulfill the purpose of the Rule 145 order is to refuse to let Mr. Kent testify. This is a fraud case, where the core issue is one of credibility—primarily the credibility of O'Neal and Thompson but also the credibility of other witnesses, including at least one of the witnesses whose testimony has been furnished to Mr. Kent. Also the factual areas as to which Mr. Kent would be testifying relate to and might have an impact on those credibility issues. Moreover, because of the extremely wide-ranging cross-examination of all of the witnesses by all of the counsel in this consolidated case, reading the full testimony of any of the witnesses would, in the Court's opinion, be entirely too revealing in this case. While we think it unnecessary to make a finding of prejudice to support the sanction we

---

[7]We are astonished by counsel's statement that it did not occur to him that giving Mr. Kent two volumes of the trial transcript might be a violation of the sequestration order. See *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1373 (5th Cir. 1981). In any event, that it did not occur to counsel cannot explain counsel's action, once he had been advised that it was a violation, of later giving Mr. Kent the transcript of the testimony of two more witnesses. We consider that a willful action sufficient to support the sanction of a contempt of this Court. Rule 145(b). However, we have concluded that there is a more appropriate sanction to be applied in this case which will better vindicate the Court's authority, protect the record, and carry out the purpose of Rule 145.

impose, we are satisfied that permitting Mr. Kent to testify would be prejudicial to petitioner Thompson. Much of Mr. Kent's testimony would go to those areas as to which there are conflicting positions and interests as between Thompson, on the one hand, and petitioners Trawlers and O'Neal, on the other hand.

This Court recently confronted a claimed violation of our Rule 145 exclusion order. That case involved a question whether showing the Government's expert witness a document prepared by another expert witness during the latter's testimony was a violation of that Rule, and a motion to strike the testimony of the Government's expert witness and to strike the Government's cross-examination of the taxpayer's expert witness. *Colorado National Bankshares, Inc. v. Commissioner, supra.* There, we found a violation of the order, but concluded there was no prejudice to the taxpayer and little likelihood that an expert witness would change his story, or alter or conform his testimony. Also, the Court had an interest in having a fully developed record in those areas requiring expert testimony. Accordingly, we chose not to strike the testimony or impose other sanctions. In contrast, the present case involves a clear and intentional violation of the Court's Rule 145 order, a fact witness who would be testifying about hotly disputed factual issues, and serious credibility issues. Accordingly, since counsel for petitioners Trawlers and O'Neal intentionally violated the Court's Rule 145 order by furnishing their prospective witness, Mr. Kent, with transcripts of the testimony of witnesses who have already testified in the case, the Court will not permit Mr. Kent to testify at the further trial session of this case. The motion to modify the Court's order nunc pro tunc will be denied.

To reflect the above holding,

*An appropriate order will be issued.*