KEVIN SMITH AND AMY SMITH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HOWARD BENATOVICH AND LANA BENATOVICH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 10171-86, 10172-86.      Filed June 28, 1989.

*Victor T. Fuzak,* for the petitioners.
*Robert W. Sadowski* and *Laurence A. Hoch,* for the respondent.

OPINION

PARKER, *Judge:* These cases were assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions

of section 7443A(b) of the Internal Revenue Code of 1986 and Rule 180 et seq.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, *Special Trial Judge:* These cases are before the Court on respondent's motion to strike the direct testimony of Norman F. Swanton, and petitioners' cross-motion for order declaring Norman F. Swanton exempt from prior sequestration order and in opposition to motion to strike. The issue to be decided is whether petitioners' counsel violated the Court's order under Rule 145 (sometimes referred to herein as the exclusion or sequestration rule or simply the rule) excluding witnesses from the courtroom while other witnesses testify. If we find that the Rule 145 order has been violated, we must determine the appropriate sanctions, if any, to be imposed.

## FINDINGS OF FACT

Briefly, the underlying substantive issue in these cases is whether petitioners may deduct losses resulting from their investments in coal partnerships sponsored by the Swanton Corp. Norman F. Swanton was the president, chief executive officer, and chairman of the board of the Swanton Corp. A central issue is whether the partnerships were entered into for profit.

This trial commenced in New York, New York, on February 8, 1988, with the testimony of petitioners' expert. Respondent's experts testified on February 9 and 10, 1988. On March 28, 1988, the trial resumed in Buffalo, New York.[2] At this time, prior to any fact witnesses being called to testify, respondent moved to exclude the witnesses from the courtroom. This colloquy resulted:

[Respondent's counsel]: Your Honor, if I may move to exclude the witnesses.

---

[1]All statutory references are to the Internal Revenue Code of 1954 as amended and as in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided.

[2]Trial was held in New York, New York, except during Mar. 28 and 29, 1988, when trial was held in Buffalo, New York.

THE COURT: Yes.

[Petitioners' counsel]: I would object to the exclusion of the witnesses. I don't see any particular purpose to be served by it.

THE COURT: It's my understanding of the rule that if somebody moves for it I don't have any discretion about it.

[Petitioners' counsel]: A similar motion might be made to exclude Mr. Mullenex and Mr. Caffrey [respondent's expert witnesses], who are here also apparently for the Government or on the Government's behalf.

[Respondent's counsel]: Mr. Mullenex and Mr. Caffrey are not going to be testifying [further]. They are here solely as advisors. They are not going to be testifying during these proceedings.

* * * * * * *

[Petitioners' counsel]: I take it, Your Honor, there are no fact witnesses on behalf of the Government in the courtroom.

[Respondent's counsel]: That's correct, Your Honor.

[Tr. 19-20.]

After the Court granted respondent's motion, petitioners' fact witnesses, including Kevin Smith and Harry Quint, the general partners of the two test partnerships, were excluded from the courtroom. The Court allowed respondent's expert witnesses to remain in the courtroom because they were present solely to advise respondent and were not going to testify further. Norman F. Swanton was not present at this time; he later attended this trial only to testify and not to assist petitioners in the presentation of their cause.

Petitioners' fact witnesses testified on March 28 and 29, 1988. Prior to the commencement of testimony on March 30, 1988, petitioners' counsel inquired:

[Petitioners' counsel]: * * * I see two other gentlemen here, and I wonder if they could identify themselves or identify themselves as not being prospective witnesses. I assume they are people with the Government.

THE COURT: Yes.

[Respondent's counsel]: Your Honor, we have Mr. Goldstein sitting here and Mr. Hamelburg, and they are here just to view the trial. They will not be testifying in any capacity.

THE COURT: They are part of District Counsel's office.

[Respondent's counsel]: Yes, Your Honor.

THE COURT: Does that satisfy you?

[Petitioners' counsel]: Yes, sir.

[Tr. 397.]

Pursuant to our order under Rule 145, petitioners' fact witnesses were again excluded from the courtroom when not

testifying. Respondent's fact witnesses testified on March 30 and 31, and April 1 and 6, 1988. Also, a fact witness testified for petitioners on March 31, 1988.

Trial was then postponed pending the outcome of an investigation of Mr. Swanton by the Department of Justice. On February 28, 1989, trial resumed and petitioners' counsel called Mr. Swanton to testify. This was the first occasion on which Mr. Swanton had been present in the courtroom during this trial. Mr. Swanton had been listed in petitioners' and respondent's trial memoranda as an anticipated witness at trial.

Mr. Swanton testified on February 28 and March 1, 1989. During Mr. Swanton's direct testimony on February 28, petitioners' counsel asked Mr. Swanton whether he had read the trial transcript of two witnesses, Richard Rouse and Dell Adams, who had testified on April 6 and March 31, 1988, respectively.

[Petitioners' counsel]: Mr. Rouse has given testimony in this action. Have you had an opportunity to review the testimony that he gave?
[Mr. Swanton]: Yes.
[Petitioners' counsel]: A transcript of it, that is.
[Mr. Swanton]: Yes, I have.
[Tr. 148.]

     *  *  *  *  *  *  *

[Petitioners' counsel]: Now, sir, have you also had an opportunity to review the transcript of the testimony given in this proceeding by Mr. Del Adams?
[Mr. Swanton]: Yes, I have.
[Tr. 168.]

Both Messrs. Rouse and Adams were former presidents of Kenerco Corp., a coal company that was a subsidiary of Swanton Corp. Mr. Adams was also a former president and chief operating officer of Swanton Corp.

During Mr. Swanton's direct testimony on March 1, 1989, respondent raised an objection that the Court's order to exclude witnesses had been violated because Mr. Swanton had read the trial transcript. The following exchange ensued:

[Respondent's counsel]: Also, Your Honor. There's another objection I have, in that I think there was an order by the Court, of exclusion of witnesses, and I think this factual matter relates to Mr. Swanton having

reviewed the testimony of prior witnesses. I think that violates the order to exclude witnesses.

[Petitioners' counsel[3]]: I don't know where that comes from. That, from my standpoint, is from left field. That order was not issued by the Court for any purpose other than to have witnesses on the same side, I assume, tailoring their testimony to comport with witnesses from that same side.

It certainly doesn't prohibit Mr. Swanton here, about whom some comments and statements have been made and testimony by witnesses for the Government, from coming in and saying no, that didn't happen or yes it did or whatever the case was.

[Respondent's counsel]: Well, I think, Your Honor the problem is that exactly what happened is that Mr. Swanton has read the transcript, which is effectively the same thing as sitting and listening to the testimony. That was done with Dale Adams, according to Mr. Swanton's testimony. That was done with Richard Rouse's testimony and that was obviously done with the expert's testimony. I think that's violative of that rule.

[Tr. 193.]

The Court allowed petitioners' counsel to continue his direct examination of Mr. Swanton, subject to respondent's motion to strike. Following the direct examination, respondent cross-examined Mr. Swanton.

After the conclusion of Mr. Swanton's entire testimony, respondent moved to strike Mr. Swanton's direct testimony because Rule 145 had been violated. This Court ordered petitioners to respond to respondent's motion to strike, to state the extent to which trial transcripts were made available to Mr. Swanton, and to disclose the identity of the person who made such transcripts available.

Prior to receiving this Court's order, petitioners' counsel submitted a motion entitled "Petitioner's Cross-Motion for Order Declaring Norman F. Swanton Exempt from Prior Sequestration Order and In Opposition to Motion to Strike." In that motion, petitioners argue that Mr. Swanton, by virtue of "the key role played by Mr. Swanton in the matters at issue," qualifies under Rule 145(a)(3) as a "person whose presence is shown by a party to be essential to the presentation of his cause." Thus, petitioners contend that Mr. Swanton is exempt from Rule 145. Petitioners further state that if any violation of Rule 145 did occur, it was wholly unintentional.

---

[3]The transcript erroneously attributes this statement to respondent's counsel rather than to petitioners' counsel.

Subsequent to receiving this Court's order to respond, petitioners' counsel submitted a letter,[4] dated March 28, 1989, in which he stated that he had directed that the transcripts of the trial proceedings held from March 28, 1988, through April 6, 1988, be forwarded to Mr. Swanton and his attorney. During this period of the trial, testimony was elicited from: (1) An accountant whose clients invested in one of the Swanton coal partnerships, (2) two general partners of Swanton coal partnerships, (3) two limited partners of Swanton coal partnerships, (4) the co-founder of Norman F. Swanton Associates, Inc., (5) three former presidents of Kenerco Corp., (6) a former Kenerco Corp. chief engineer, and (7) an engineer who prepared coal reserve reports for Kenerco.

The Court heard both respondent's and petitioners' motions in Washington, D.C., on April 12, 1989.

OPINION

Tax Court Rule 145 provides:

RULE 145. EXCLUSION OF PROPOSED WITNESSES

(a) Exclusion: At the request of a party, the Court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This Rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

(b) Contempt: Among other measures which the Court may take in the circumstances, it may punish as for a contempt (i) any witness who remains within hearing of the proceedings after such exclusion has been directed, that fact being noted in the record; and (ii) any person (witness, counsel, or party) who willfully violates instructions issued by the Court with respect to such exclusion.

As this Court stated in *Thompson v. Commissioner,* 92 T.C. 486, 494 (1989):

The purpose of this rule is to prevent witnesses from tailoring their testimony to that of prior witnesses and to minimize altered, uncandid testimony. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1373 (5th Cir. 1981); *Colorado National Bankshares, Inc. v. Commissioner,* 92 T.C. 246 (1989). If a witness is permitted to hear or read the testimony of

---

[4]This letter was filed by this Court as a "Supplement to Petitioners' Cross-Motion and In Opposition to Motion to Strike."

an opposing witness, the later witness can ascertain the precise points of difference between their testimonies and can shape his own testimony to the advantage of his side of the case. *Weeks Dredging & Contracting, Inc. v. United States,* 11 Cl. Ct. 37, 49 (1986). However, if a witness is permitted to hear or read the testimony of a witness on the same side, this will allow the later witness the opportunity to sharpen his testimony to correspond with the earlier testimony. *Weeks Dredging & Contracting, Inc. v. United States, supra.*

The opportunity of a prospective witness to shape his testimony is as great with a witness who reads trial testimony as with one who hears the testimony in open court. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1373 (5th Cir. 1981). The potential for harm may be even more pronounced with a witness who reads trial transcript than with one who hears the testimony in open court, because the former need not rely on his memory of the testimony but can thoroughly review and study the transcript in formulating his own testimony. *Miller v. Universal City Studios, Inc., supra.* Furthermore, a fact witness, as opposed to an expert witness, has a greater opportunity to tailor his testimony because an expert is less likely to alter his testimony "in the sense of changing his story or changing facts." *Colorado National Bankshares, Inc. v. Commissioner,* 92 T.C. 246, 253 (1989). Against this background, we analyze the arguments offered by petitioners.

First, petitioners argue that Mr. Swanton qualifies under Rule 145(a)(3) as "a person whose presence is shown by a party to be essential to the presentation of his cause" and therefore is exempt from Rule 145. Rule 145 follows Rule 615 of the Federal Rules of Evidence,[5] and our Rule 145(a)(3) is virtually identical to subsection (3) of Rule 615. The Note of the Advisory Committee on Rule 615, which provides two illustrations of subsection (3), states, "The category contemplates such persons as an agent who handled the transaction being litigated or an expert needed

---

[5]Rule 615 provides:

RULE 615. Exclusion of Witnesses

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

to advise counsel in the management of the litigation. See Wigmore section 1841. n.4." Petitioners submit that Mr. Swanton fits within either of these categories. We cannot agree.

Despite the fact that Mr. Swanton devised the structure of these coal partnerships, we cannot conclude that Mr. Swanton qualifies as an agent who handled the transactions being litigated in the cases before us. None of his testimony concerns the detailed operations of the partnerships. Also, we do not find that Mr. Swanton was an expert needed to advise counsel in the management of the litigation. Therefore, we cannot find that Mr. Swanton was essential to the presentation of petitioners' cause. Indeed, Mr. Swanton never appeared at trial except when called to testify as a fact witness. There is no indication that he aided petitioners' counsel throughout the course of trial.

Petitioners allege that Mr. Swanton is exempt from the rule because his testimony is "critical" to petitioners' case. But, the inquiry under the rule is not whether the person's testimony is critical, but rather whether the person is essential to the *presentation* of the party's cause. We have found that Mr. Swanton was not essential. Thus, we decline to declare nunc pro tunc that Mr. Swanton qualified under Rule 145(a)(3). Mr. Swanton, therefore, was not exempted from the exclusion order by virtue of Rule 145(a)(3).

Petitioners' counsel next argues that he did not realize that Rule 145 had been invoked because respondent did not specifically mention "Rule 145" when he moved to exclude the witnesses. Respondent's motion, however, clearly apprised petitioners' counsel that respondent sought an order to exclude the witnesses from the courtroom. Furthermore, it is clear from the subsequent discussion during the course of the trial that both counsel were aware that the Rule had been invoked.[6]

---

[6]In addition to the dialogue previously quoted in the text, the exclusion rule also was addressed in the following two excerpts which occurred on Mar. 28 and 29, 1988, respectively:

THE COURT: * * * You do not plan to call these witnesses at all as fact witnesses—the people that are in the courtroom?

[Respondent's counsel]: That's correct, Your Honor.

THE COURT: You may call—Well, you won't be calling them at all any more, then?

[Respondent's counsel]: No, Your Honor.

THE COURT: I just wanted to make sure.

Petitioners' counsel also contends that he believed that the Rule applied only to those witnesses in the courtroom at the time respondent moved to invoke the Rule. We find this argument unpersuasive, especially in light of the events that followed. During the trial on March 30, 1988, petitioners' counsel inquired, as quoted in the findings of fact above, as to whether two individuals in the courtroom were prospective witnesses. This occurred 2 days after the Rule had been invoked and subsequent to the discussions referred to in footnote 6, *supra.* The individuals about whom counsel inquired also had not been in the courtroom when the Rule was invoked.

The essence of the arguments offered by petitioners' counsel is that he was unaware of the nature and extent of Rule 145 (or Rule 615). Even if there were a factual basis for this argument, counsel appearing before this Court are held to have knowledge of our Rules of Practice and Procedure. This is particularly applicable to petitioners' counsel, who has extensive trial experience. Furthermore, the purpose of Rule 145 (and Rule 615) is to protect the evidentiary record. That purpose is defeated even when the violation occurs through ignorance.

Based on the above, we find that a violation of Rule 145 has occurred. We now consider whether sanctions should be imposed under Rule 145(b). Sanctions are within the Court's discretion, and we may strike testimony, refuse to let a witness testify, permit rebuttal witnesses, cite the witness, counsel, or party for contempt, grant a new trial, and impose other sanctions we find appropriate. *Colorado National Bankshares, Inc. v. Commissioner, supra,* 92 T.C. at 251-252.

Here, respondent has moved to strike Norman Swanton's direct testimony. A violation of a sequestration order does

[Tr. 21.]

\*       \*       \*       \*       \*       \*       \*

THE COURT: Let me ask—You would not be calling Mr. Quint any more, rebuttal or anything else?

[Petitioners' counsel]: No, sir, assuming there is no other testimony that comes in by the government that I have to recall him on, but not with anything that this witness will testify to.

THE COURT: You don't object to him being in the courtroom?

[Respondent's counsel]: No, Your Honor.

[Tr. 305.]

not automatically require exclusion of the witness' testimony. *Holder v. United States*, 150 U.S. 91, 92 (1893); *Colorado National Bankshares, Inc. v. Commissioner, supra*, 92 T.C. at 252. Petitioners argue that, even if Rule 145 was violated, Mr. Swanton's testimony should not be stricken because respondent has failed to show that prejudice resulted because Mr. Swanton read the transcripts. We disagree.

One of the aspects of these cases is whether the coal partnerships promoted by Swanton Corp. were organized for profit. The thrust of Mr. Swanton's testimony was that the coal operations had economic substance and were organized with an actual and honest profit objective. Thus, the potential for prejudice permeates Mr. Swanton's entire testimony.

Petitioners assert that no part of Mr. Swanton's testimony was "tailored" to rebut the testimony of previous witnesses. There is a strong suggestion, however, that Mr. Swanton's testimony was tailored to rebut or support the testimony of prior witnesses. For example, an important issue in these cases is whether the notes used in the coal partnerships were recourse or nonrecourse. During the cross-examination of a prior witness, respondent asked the witness whether he had received any correspondence from Mr. Swanton indicating that the notes used in the coal partnerships were nonrecourse. The witness answered no, whereupon respondent showed him correspondence from Mr. Swanton that stated that the notes were nonrecourse. The witness then suggested that this must have been a mistake. On direct, petitioners' counsel referred Mr. Swanton to the correspondence designating the partnership notes as nonrecourse, and asked Mr. Swanton whether these notes were in fact nonrecourse. Mr. Swanton answered no, the notes were recourse rather than nonrecourse. Petitioners' counsel then asked Mr. Swanton why the notes were referred to as nonrecourse, to which Mr. Swanton replied that this was "just an error in transcription." Since Mr. Swanton had read the earlier testimony, neither respondent nor this Court will ever know how he might have answered this last question had the Court's sequestration order not been violated. It is impossible for us to determine whether

Mr. Swanton's answer resulted from his access to the prior testimony. An inference that it did, however, is certainly reasonable.

Petitioners' counsel also states that he had interviewed Mr. Swanton prior to giving him the transcripts, and claims that Mr. Swanton did not alter his testimony as a result of reading the transcripts. We simply have no means to determine whether this is true. An order under Rule 145 is intended to protect the evidentiary record. Once a critical witness such as Mr. Swanton has been permitted to read virtually the entire trial transcript, there is little possibility of assuring that his testimony has not been tainted. Assurances such as those proffered by petitioners' counsel after he has violated the Court's order do not adequately protect the evidentiary record from that possible taint.

Lastly, petitioners' counsel maintains that he did not intentionally violate the Court's order under Rule 145. While petitioners' counsel may not have willfully done so, he did intentionally deliver the transcripts to Mr. Swanton, thus violating our exclusion order. Since he had already interviewed Mr. Swanton and allegedly knew what his testimony would be, one can only speculate as to why he gave Mr. Swanton the transcripts to read. Most charitably stated, counsel's violation of the Rule permitted Mr. Swanton's memory to be "jogged" or his recollection to be "refreshed" in a way and to an extent that no other witness' memory or recollection was enhanced.

Having found that the Rule was violated, that the violation resulted in prejudice to respondent, and considering the extensive testimony revealed to Mr. Swanton, we conclude that the appropriate sanction is to strike Mr. Swanton's direct testimony. See *Thompson v. Commissioner, supra;* compare *Colorado National Bankshares, Inc. v. Commissioner, supra.* The pervasiveness of Mr. Swanton's testimony prevents us from attempting to strike only the "untainted" portions of his direct testimony, with the following limited exception. Mr. Swanton's testimony detailing his business background covered in pages one through sixteen of the February 28, 1989, transcript will not be stricken.

*An appropriate order will be issued.*