T.C. Memo. 2004-121

UNITED STATES TAX COURT

THOMAS FREDERICK DADIAN AND LOIS ANN DADIAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1051-02.                    Filed May 19, 2004.

Thomas Frederick and Lois Ann Dadian, pro sese.

<u>Jonathan H. Sloat</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent denied petitioners' request under
section 6404[1] for abatement of interest on their Federal income
tax deficiency for 1984.  The issue for decision is whether

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at the time the petition was
filed, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

respondent's denial was an abuse of discretion. Because we believe some delays were caused by the dilatory performance of ministerial acts by respondent, we hold that it was an abuse of discretion in part, and that petitioners are entitled to interest abatement for the periods: (1) September 9, 1995, through March 31, 1996; and (2) April 1 through July 19, 1999.

FINDINGS OF FACT

Some of the facts are stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Santa Paula, California.

On their 1984 Federal income tax return, petitioners reported a loss on Schedule E, Supplemental Income and Loss, of $12,750, attributable to their investment in a partnership called South Bay Partners (South Bay). South Bay was a limited partner in Redwood Associates (Redwood), one of 50 coal tax shelter partnerships or joint ventures (Swanton programs) created by Norman Swanton (Mr. Swanton).[2] In 1972, Mr. Swanton cofounded

_____

[2] Redwood and 18 other Swanton programs were formed after the enactment of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, secs. 402-407(a), 96 Stat. 648, and are subject to the partnership rules of TEFRA. The remaining 30 Swanton partnerships were formed before the enactment of TEFRA.

the Swanton Corp., a Delaware corporation headquartered in New York, which promoted the Swanton programs.[3]

On July 14, 1986, respondent issued a notice of beginning of administrative proceeding (NBAP) to South Bay with respect to his examination of Redwood under the audit procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, secs. 402-407(a), 96 Stat. 648. As a result of the examination of the Swanton programs, respondent recommended that the Department of Justice (DOJ) criminally prosecute Mr. Swanton. During the criminal investigation, respondent suspended civil action with respect to the Swanton programs. Eventually, the period of limitations for criminal prosecution of Mr. Swanton expired.[4]

On August 1, 1990, respondent issued a notice of final partnership administrative adjustment (FPAA) to Redwood. On October 26, 1990, Redwood filed a petition with this Court, challenging respondent's determinations in the FPAA.

In May 1991, Moira Sullivan (Ms. Sullivan), an Internal Revenue Service (IRS) attorney, was assigned to work on the

---

[3] For a more detailed discussion of the Swanton programs, see Kelley v. Commissioner, T.C. Memo. 1993-495.

[4] Respondent's records of the Swanton programs were destroyed in the terrorist attack on the World Trade Center on Sept. 11, 2001. We have accepted uncontradicted testimony from an Internal Revenue Service (IRS) attorney who worked on the cases regarding certain details of the events surrounding the litigation and settlement of the Swanton programs.

Swanton programs. In September 1991, respondent and counsel representing the TEFRA Swanton programs reached a basis of settlement, but finalization of the settlement was deferred pending the trial of the pre-TEFRA cases.

Two trials for the pre-TEFRA Swanton programs were conducted in the Tax Court, one in 1989 and the other in 1992. Smith v. Commissioner, 92 T.C. 1349 (1989); Kelley v. Commissioner, T.C. Memo. 1993-495. Respondent filed his final brief in the pre-TEFRA Tax Court litigation on August 14, 1992.[5] Negotiations regarding the terms of the settlement of the TEFRA Swanton programs then restarted and continued until September 1993. The final terms of settlement allowed the investors to deduct half their cash investments, and subjected them to increased interest under section 6621(c).

In late 1993, Ms. Sullivan began working on the implementation of the basis of settlement for the TEFRA partnerships. Although other IRS employees helped her occasionally, Ms. Sullivan was generally the only IRS employee assigned to the task of implementing the basis of settlement. The settlement required her to draft closing agreements with settlement numbers for each of the 37 Redwood partners, including

---

[5] The Tax Court docket entry sheet for Kelley v. Commissioner, supra, docket No. 34982-85, shows this date. Respondent filed a notice of intent not to file a surrebuttal brief on Sept. 30, 1992.

South Bay. She was not required to draft closing agreements for petitioners or for the other investors beyond the Redwood partner level. To calculate the settlement numbers, Ms. Sullivan relied on investment records provided by the Swanton Corp. These records stated each partner's cash account, which included the cash each partner had contributed and any distributions that each partner had received. The records also listed the tax years in which any contributions or distributions had been made. For each closing agreement, Ms. Sullivan had to divide the partner's cash account, as listed on the Swanton records, in half. The resulting number, which represented the partner's allowable deduction under the settlement terms, was inserted into the closing agreement.

Ms. Sullivan sent out closing agreements to Redwood's counsel and tax matters partner (TMP) in February or March 1996. In late 1997, Redwood's TMP notified Ms. Sullivan that the investment amounts on which she based the Redwood calculations were incorrect. After recalculating the Redwood numbers, Ms. Sullivan sent the final set of closing agreements for Redwood's partners to Redwood's TMP and counsel during the first quarter of 1998. South Bay's TMP signed a closing agreement with respect to South Bay's tax liabilities on March 13, 1999. Respondent countersigned the closing agreement on July 19, 1999.

On February 9, 2000, respondent sent petitioners a letter explaining that the examination of Redwood had been completed. There is no evidence in the record that respondent contacted petitioners personally before this date regarding their 1984 taxable year. With the February 9, 2000, letter, respondent also sent petitioners Form 4549A-CG, Income Tax Examination Changes (notice of adjustment), notifying petitioners that their 1984 taxable income had been adjusted by $10,219. The adjustment resulted in a deficiency of $3,912 for 1984. The notice of adjustment also stated that petitioners owed $16,390.95 of section 6621(c) interest. Respondent assessed the deficiency and the interest on May 29, 2000. On June 7, 2000, petitioners paid $20,302.95 toward their assessed liabilities.[6]

On December 18, 2000, petitioners filed Form 843, Claim for Refund and Request for Abatement, requesting abatement of the interest that had accrued from 1986 to 2000. On November 29, 2001, respondent issued a notice of determination (notice) to petitioners, denying in full their request for interest abatement. The notice states that the Appeals officer did not find any errors or delays on respondent's part to merit the abatement of interest. The notice also states that respondent

_____

[6] Although the parties have stipulated that petitioners made a $20,302.95 payment on June 7, 2003, the Form 4340, Certificate of Assessments Payments and Other Specified Matters, included in the record as Exhibit 7-J shows that the payment was credited to petitioners' account on June 7, 2000.

was not authorized to abate the interest that accrued before February 9, 2000, because respondent did not notify petitioners of the deficiency in writing before that date.

Petitioners timely filed a petition in this Court requesting review of respondent's determination to deny their request for interest abatement.

OPINION

As applicable to the year in question, section 6404(e)(1)(B) provides that the Commissioner may abate all or any part of an assessment of interest on any payment of certain taxes to the extent that any error or delay in such payment is attributable to an officer or employee of the IRS "being erroneous or dilatory in performing a ministerial act".[7]  A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place.  Lee v. Commissioner, 113 T.C. 145, 150 (1999); see also sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  Abatement is available under section 6404(e)

_____

[7] Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error or delay in performing a ministerial or "managerial" act.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996).  That standard applies only to tax years beginning after July 30, 1996, and thus does not apply in the present case.  Id. sec. 301(c).

only for periods after the IRS has contacted the taxpayer in writing with respect to the deficiency or payment.  Sec. 6404(e)(1).

This Court may order abatement of interest only when the Commissioner has abused his discretion in denying a taxpayer's request to abate interest.  Sec. 6404(h).  To show an abuse of discretion, a taxpayer must prove that the Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

The Appeals officer denied petitioners' request for abatement in part because the IRS did not notify them of the Redwood audit until February 9, 2000, when the notice of adjustment was sent.  Section 6404(e) limits the Commissioner's authority to abate interest to periods after which the IRS has contacted the taxpayer in writing about the deficiency or payment.

TEFRA requires the Commissioner to notify certain partners of the beginning and ending of a partnership audit.  Sec. 6223(a).  The Commissioner is not required to give notice to a partner if the partnership has more than 100 partners, and the partner has less than a 1-percent profits interest.  Sec. 6223(b)(1).  In the case of an indirect partner owning an interest in the partnership through a pass-thru entity that would otherwise be entitled to notice, the Commissioner is required to

give notice to such partner, in lieu of the pass-thru entity, if the indirect partner's name, address, and profits interest is provided. Sec. 6223(c)(3). To trigger the Commissioner's duty to notify under section 6223(a), the names, addresses, and profits interests of partners and indirect partners must be provided to the IRS in one of two ways. They must be furnished either on the tax return of the partnership being audited, or in a letter to the IRS that fulfills the requirements of section 301.6223(c)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987). Sec. 6223(c). The IRS may use other information that is available to it; however, it is not required to "search its records" to obtain information not provided under section 6223(c). Sec. 301.6223(c)-1T(f), Temporary Proced. & Admin. Regs., supra.[8]

In this case, the IRS was required to, and did, notify South Bay of the Redwood audit. Sec. 6223(a). Redwood's partnership return would have indicated South Bay's name, address, and profits interest, and would also have indicated that Redwood had only 37 partners. There is no evidence in the record that the Redwood partnership return would have named South Bay's partners. Although the IRS could have discovered that information using its own records, in this case it chose not to. As a result,

---

[8]The temporary regulations were in effect for the year in issue; the Commissioner published final regulations effective Oct. 4, 2001. Sec. 301.6223(c)-1(g), Proced. & Admin. Regs.

petitioners were not entitled to receive personal notification by the IRS of the Redwood audit.

Instead, South Bay's TMP was required to notify petitioners of the partnership level proceedings. Sec. 6223(g) and (h)(2).

The Appeals officer concluded that because petitioners were not entitled to personal notification until the notice of adjustment was sent, they were not entitled to interest abatement under section 6404(e) before that date. However, the date the NBAP was sent to South Bay should be considered the date of respondent's first written contact with petitioners for purposes of section 6404(e). See Mekulsia v. Commissioner, T.C. Memo. 2003-138. In this case, the Appeals officer did not apply this requirement correctly. Consequently, we will look to the specifics of petitioners' case in order to decide whether they are entitled to abatement of interest.

Petitioners argue that respondent abused his discretion in denying their request for interest abatement for the period July 14, 1986, through February 9, 2000. The table below describes the time line in which the relevant events occurred.

| Activity | Date |
|---|---|
| Petitioners file their 1984 return | Apr. 15, 1985 |
| Pre-TEFRA test cases begin in Tax Court | 1989 |
| Ms. Sullivan is assigned to Swanton programs | May 1991 |
| Tentative basis of settlement is reached for TEFRA Swanton programs | Sept. 1991 |
| Respondent files last brief in pre-TEFRA Swanton Tax Court litigation | Aug. 14, 1992 |
| Final agreement on terms of settlement is reached | Sept. 1993 |
| Ms. Sullivan sends closing agreements to Redwood | February/March 1996 |
| Redwood's TMP and counsel inform Ms. Sullivan that the computations for Redwood were based on incorrect investment numbers | End of 1997 |
| Ms. Sullivan sends revised closing agreements to Redwood | First quarter 1998 |
| South Bay's TMP signs closing agreement | Mar. 13, 1999 |
| Respondent countersigns South Bay closing agreement | July 19, 1999 |
| Respondent issues notice of adjustment to petitioners | Feb. 9, 2000 |

A.  July 14, 1986, Through May 8, 1992

We held in Beagles v. Commissioner, T.C. Memo. 2003-67, that the Commissioner was not erroneous or dilatory in performing a ministerial act with respect to the Swanton programs between April 15, 1984, and May 8, 1992.  We will briefly describe the events that support this holding.

Respondent suspended his activity on the Swanton programs from April 1984 until the period of limitations for criminal prosecution of Mr. Swanton expired, because Mr. Swanton was being criminally investigated by the DOJ.  We have previously held that the delay of a civil matter until resolution of related criminal proceedings is reasonable.  Taylor v. Commissioner, 113 T.C. 206, 212 (1999), affd. 9 Fed. Appx. 700 (9th Cir. 2001).  After the criminal investigation of Mr. Swanton ended, litigation in this Court for the pre-TEFRA Swanton programs continued until September 1992.  See Smith v. Commissioner, 92 T.C. 1349 (1989); Kelley v. Commissioner, T.C. Memo. 1993-495.  The mere passing of time during the litigation phase of a dispute does not establish an error or delay by the Commissioner in performing a ministerial act.  Lee v. Commissioner, 113 T.C. at 150.  We therefore conclude, as this Court did in Beagles v. Commissioner, supra, that it was not an abuse of discretion for respondent to deny petitioners' request for abatement of interest for the period July 14, 1986, through May 8, 1992.

Beagles v. Commissioner, supra, does not provide us with guidance for periods after May 8, 1992, because in that case the Commissioner granted interest abatement to the taxpayer for the period May 8, 1992, through April 15, 1999. We review the events that occurred after May 8, 1992, to determine whether respondent abused his discretion.

B. May 9, 1992, Through September 1993

From May 9 to August 14, 1992, respondent was involved in litigation before this Court concerning the pre-TEFRA Swanton programs. In accordance with our holding above, it was not an abuse of discretion for respondent to deny interest abatement for that period. See Lee v. Commissioner, supra.

After the completion of the pre-TEFRA Tax Court litigation, Ms. Sullivan negotiated with counsel for the TEFRA Swanton programs regarding the final terms of settlement until September 1993. The TEFRA Swanton settlement work was added to Ms. Sullivan's normal caseload. According to her testimony, because she was not assisted by any other attorney, she could not finalize the terms of settlement while briefing the pre-TEFRA cases. The settlements could have been completed more quickly if more than one person had regularly been working on them. Arguably, respondent made a managerial error when he assigned only one employee to handle the settlement of all of the TEFRA partnerships. This managerial decision contributed to the delay

in the resolution of petitioners' case after the overall settlement was reached.

Under current law, section 6404(e) would authorize abatement of interest during periods in which the settlement of the Redwood case was set aside as a result of managerial errors. However, the language added to section 6404(e) permitting the abatement of interest for unreasonable errors or delays in performing managerial acts applies only to tax years beginning after July 30, 1996, and thus does not apply in the present case. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(c), 110 Stat. 1452, 1457 (1996).

For tax years prior to 1996, section 6404(e) allows interest abatement only for errors or delays by an officer or employee of the IRS in performing ministerial acts. Respondent's decision to assign only one attorney to the Swanton TEFRA cases was not a ministerial act, because the decision required discretion and judgment. See Mekulsia v. Commissioner, T.C. Memo. 2003-138; Beagles v. Commissioner, supra; Jacobs v. Commissioner, T.C. Memo. 2000-123; sec. 301.6404-2T(b)(2), Examples (4) and (5), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). The settlement negotiations that lasted until September 1993 also were not ministerial. So, through September 1993, the delay was not due to a ministerial act. However, further analysis is necessary

in order to determine whether any ministerial errors by respondent contributed to the subsequent delays in petitioners' case.

C.  October 1993 Through March 1996

After the terms of the settlement were resolved, respondent had to identify each of the 37 Redwood partners, determine each partner's cash account, and divide each cash account in half to arrive at the allowable deduction for each partner.  All of this information was available to Ms. Sullivan on the records provided by the Swanton Corp.  The determination of the allowable amounts did not involve any tax computation; it simply involved taking one-half of each partner's cash account.  The closing agreement language had previously been agreed upon, and, therefore, the preparation of each closing agreement was a matter of inserting the amount allowable as a deduction.  We therefore conclude that Ms. Sullivan's remaining tasks were ministerial acts.  See, e.g., sec. 301.6404-2T(b)(2), Example (2), Temporary Proced. & Admin. Regs., supra.

Given the number of investors involved in the settlement, there were many closing agreements that needed to be prepared, but the South Bay closing agreement was not sent to Redwood until February or March 1996, a period of 2-1/2 years after the terms of settlement were agreed on.

This Court recently held that it was not a ministerial error for respondent to send out closing agreements to a similar Swanton

partnership as late as September 9, 1995.  <u>Deverna v. Commissioner</u>, T.C. Memo. 2004-80.  In <u>Deverna</u>, we recognized that because there were many Swanton investors, 2 years from the time of settlement was an acceptable delay.  Nevertheless, to prepare closing agreements, Ms. Sullivan was ultimately just taking numbers from records that were available to her.  The South Bay closing agreement was sent to Redwood in February or March 1996.  Respondent has not adequately explained the additional 6-month delay in sending out South Bay's closing agreement.  Ms. Sullivan's only explanation of the delay was that the Swanton investors were numerous.  Without a more specific explanation of the events that caused the additional 6-month delay past the time the closing agreements were sent out in <u>Deverna</u>, abatement of interest is appropriate for this additional 6-month period.  Therefore, it was an abuse of discretion to deny abatement of interest for the period September 9, 1995, through March 31, 1996.

D.  <u>April 1, 1996, Through March 31, 1998</u>

Ms. Sullivan sent the closing agreements to Redwood by March 31, 1996.  Sometime at the end of 1997, Redwood's TMP informed Ms. Sullivan that the computations she had done for Redwood were based on incorrect investment figures.  Ms. Sullivan testified that she based her calculations on records that the Swanton Corp. kept for all the Swanton programs.  Redwood's investment schedule differed from those of the other Swanton programs.  The Swanton records do

not reflect the difference, and this error in the records caused Ms. Sullivan's initial calculations to be inaccurate. She sent the next set of closing agreements to Redwood in the first quarter of 1998. The delay caused by the miscalculations was the result of a mutual mistake, not of a unilateral ministerial error by respondent. Therefore, petitioners are not entitled to interest abatement for the period April 1, 1996, through the time respondent sent the next set of closing agreements.

Redwood's TMP notified Ms. Sullivan of the error in "late 1997". Ms. Sullivan sent out the revised closing agreements in the first quarter of 1998. Petitioners have not established specific days or even months during which these events occurred. Without more details, we cannot measure the time that passed between late 1997 and the date that the new closing agreements were sent out with any degree of exactness. Although it is unfortunate that 2 years were lost because of the mistake in computations, we cannot find that petitioners are entitled to interest abatement for the period April 1, 1996, through March 31, 1998, because the use of the wrong data was not solely respondent's error.

E. April 1, 1998, Through July 19, 1999

After the revised closing agreements were sent to Redwood in the first quarter of 1998, it took approximately 1 year for South Bay's TMP to sign South Bay's closing agreement, on March 13,

1999. During this period, the delay appears to be the responsibility of South Bay's TMP. Nothing in the record indicates otherwise. Therefore, petitioners are not entitled to abatement of interest for the period April 1, 1998, through March 13, 1999.

After South Bay's TMP signed the closing agreement and sent it back to respondent, respondent was required to countersign the closing agreement. The testimony concerning respondent's receipt of the executed closing agreement is speculative. Taking into account the date of execution, respondent likely received the signed closing agreement by the end of March. See Goettee v. Commissioner, T.C. Memo. 2003-43. Respondent drafted the closing agreements, which were very similar to those used in all the Swanton program settlements. Respondent's countersignature did not require discretion and consequently was a ministerial act. See id. Respondent countersigned South Bay's closing agreement on July 19, 1999, 4 months after South Bay signed it. Respondent has not adequately explained the specific events that occurred during that period to cause the delay, or why abatement of interest for that period was denied. See, e.g., Jacobs v. Commissioner, T.C. Memo. 2000-123. In light of the facts of this case, we believe 3-1/2 months was an unreasonable delay. Petitioners are entitled to interest abatement for respondent's delay in countersigning the closing agreement, for the period April 1 through July 19, 1999.

F.  <u>July 20, 1999, Through February 9, 2000</u>

After the South Bay closing agreement was countersigned, respondent adjusted petitioners' 1984 return according to the terms of the closing agreement and, on February 9, 2000, issued petitioners the notice of adjustment.  Respondent followed regular IRS procedures in the processing of petitioners' notice of adjustment.  Petitioners have not shown that respondent was dilatory in performing a ministerial act during this period.  We hold that it was not an abuse of discretion for respondent to deny petitioners' request for interest abatement for the period July 20, 1999, through February 9, 2000.

<u>Decision will be entered</u>

<u>under Rule 155</u>.