T.C. Memo. 2004-80

UNITED STATES TAX COURT

CHARLES DEVERNA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7870-02.                    Filed March 22, 2004.

<u>Donald Jay Pols</u>, for petitioner.

<u>Patricia A. Riegger</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  The petition in this case was filed in
response to a notice of determination denying petitioner's
request to abate interest on income tax liabilities for 1982,
1983, and 1984 pursuant to section 6404(e).  The issue for
decision is whether the failure to abate interest between

October 12, 1993, and September or October 1998 was an abuse of discretic

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Garden City, New York, at the time the petition in this case was filed.

During 1982 through 1984, petitioner was an investor in Manhattan Associates, a coal mining partnership. Petitioner's former wife, Barbara Deverna (B. Deverna), filed a joint Federal tax return with petitioner. B. Deverna was granted relief from joint and several liability for the assessments resulting from investments in Manhattan Associates for 1982 through 1984.

Manhattan Associates was a partnership subject to the procedures of the Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324 (TEFRA), provisions found in sections 6221-6233. Robert Brown (Brown) was the tax matters partner (TMP) for Manhattan Associates.

Thirty coal mining partnerships were promoted by Norman Swanton (Swanton) prior to 1982, and 20, including Manhattan Associates, were formed subsequent to the effective date of TEFRA (TEFRA partnerships). Test cases involving pre-TEFRA

partnerships were selected for litigation of the Swanton coal programs in the Tax Court. The remaining 20 TEFRA partnerships agreed to be bound by the outcome of the test cases. Matthew D. Lerner (Lerner) of Zapruder & Odell represented 17 of the TEFRA partnerships associated with Swanton, but did not represent Manhattan Associates. Lerner agreed to act for Manhattan Associates in a limited capacity in reviewing and signing decision documents and Forms 906, Closing Agreement on Final Determination Covering Specific Matters.

On May 18, 1984, the Internal Revenue Service (IRS) sent a letter to petitioner to notify him that Manhattan Associates was selected for examination (notice). The notice stated that the IRS was not required to notify partners individually of conferences or other events during the TEFRA proceeding. The notice further stated that the TMP was "responsible for notifying partners of the more important events during the proceeding, but the results of the proceeding generally apply to all partners even if the tax matters partner does not provide that information." The IRS and the TMP were unable to reach a settlement for Manhattan Associates.

On August 3, 1990, the IRS sent to Manhattan Associates and Brown a Notice of Final Partnership Adjustment (FPAA). On August 20, 1990, the IRS sent to petitioner an FPAA.

On October 26, 1990, Brown filed a petition in response to the FPAA, and the case was docketed in the Tax Court at docket No. 24099-90.

Settlement Negotiations

In September 1991, while waiting for the decisions of the Court in the earlier test cases, the legal representatives of the 20 TEFRA partnerships reached a basis for settlement with the IRS. The parties agreed to general settlement terms which then had to be applied individually to each of the 20 TEFRA partnerships and then to each limited partner within each partnership. The general basis of settlement, in part, was as follows:

> (a) taxpayers would be entitled to deduct 1/2 of the out of pocket cash paid to the partnership in the year the cash was paid;

> (b) the Internal Revenue Service agreed to waive any penalties asserted in the FPAA; and

> (c) the I.R.C. section 6621(c) rate of interest would apply to any deficiency.

The basis of the settlement for all of the TEFRA partnerships was the same. For the IRS to credit nearly 1,000 limited partners in the TEFRA partnerships with the proper settlement, individual computations were necessary first at the partnership level. Each of the TEFRA partnership's tax returns was different from the other partnerships' returns, and each of the limited partner's deductions on their individual tax returns

was different.  As a result of these differences, each partnership, and then each limited partner, was addressed one at a time.

Before the individual computations could be done, the IRS had to determine:  (a) How much cash was contributed by each limited partner; (b) in which tax years the contributions were made; (c) whether the limited partners received any distributions; (d) in which tax years any distributions were made; (e) whether each limited partner contributed cash towards a "Note Settlement Agreement" in 1987; (f) and how much cash, if any, was contributed by each limited partner towards the Note Settlement Agreement in 1987.  The answer to each of the six questions was needed to determine the deficiencies and/or credits for each of the nearly 1,000 limited partners in the 20 TEFRA partnerships.  After the above was determined, a computation had to be prepared by an Appeals officer from the Manhattan Appeals Office before a proposed decision document could be submitted to the Court.

On October 12, 1993, Lerner sent to "All Swanton TEFRA Partners" a letter notifying them of the settlement with the IRS (October 1993 letter).  The letter, in part, stated that the IRS would begin sending decision documents and closing agreements to the partners within 1 to 2 months after October 1993.  The letter further stated that, within 1 year after the partnership's

decision document is "filed", the IRS would send the partner a "bill" for any additional tax due. The letter mentioned several additional steps to be taken before individual computations could be completed.

In July 1994, the Manhattan Appeals Office (Manhattan Appeals) prepared computations for the settlement. A proposed decision document based on the computations had to be prepared by IRS District Counsel attorney Moira Sullivan (Sullivan). Proposed computations and a proposed decision document were sent to Lerner on September 9, 1995, and Lerner returned the signed decision document to District Counsel on November 7, 1996. On September 11, 1995, the IRS sent to Brown his first set of closing agreements to be sent to the individual partners in Manhattan Associates. Brown had the opportunity to send the computations to the limited partners for their approval of the settlement as reflected in the computations. The closing agreements included a request that Brown's wife also sign the documents. On June 27, 1996, Brown returned the closing agreements, but his wife did not sign them. On November 26, 1996, a second package of closing agreements was sent to Brown, with a request that both he and his wife sign the documents. After Brown received the second package of closing agreements, he informed District Counsel that he was not married to his wife in 1982 and 1983. On January 3, 1997, revised closing agreements

were sent to Brown and his wife.  Between January 3 and November 24, 1997, Brown signed the revised closing agreements and returned them to District Counsel's office.  The agreements had to be signed by Manhattan Appeals, however, and not by District Counsel.  The closing agreements were countersigned by Manhattan Appeals and then returned to District Counsel's office.

On November 24, 1997, after District Counsel's office received the signed closing agreements from Manhattan Appeals, the Manhattan Associates decision document was sent to the Tax Court.  On December 2, 1997, a decision was entered in the Manhattan Associates case by the Court under Rule 248(a) for 1982 through 1984.  On March 2, 1998, the decision became final under section 7481.  The Manhattan Associates case was sent to Manhattan Appeals for closing and assessment.  The case was sent to the controlling IRS service center for the Swanton coal programs for processing and forwarded to the TEFRA unit of the IRS service center where the taxpayers filed their returns so that the taxpayers could be assessed.

On September 9, 1998, Forms 4549-A, Income Tax Examination Changes, were sent to petitioner for 1984.  On October 13, 1998, Forms 4549-A were sent to petitioner for 1982.  On October 29, 1998, Forms 4549-A were sent to petitioner for 1983.

As a result of the changes to petitioner's account due to the Manhattan Associates TEFRA proceedings, the IRS assessed

$22,773 on November 16, 1998, $29,485 on January 11, 1999, and $3,063 on October 5, 1998, for 1982, 1983, and 1984, respectively. Petitioner failed fully to pay the Federal income tax liabilities for 1982 through 1984.

Request for Abatement of Interest

On December 17, 1998, C. Edmonds Allen (Allen) sent a letter to Nancy L. Jones at the IRS Kansas City Service Center requesting a correction in the calculation of petitioner's interest. The letter erroneously claimed that the TEFRA partnership settlement stated that the partnerships were not subject to the tax-motivated penalty under section 6621(c). Further, the letter argued that interest was overassessed for 1982. The letter suggested that Sullivan be contacted for documentation and verification of the settlement. Sullivan was contacted and confirmed that section 6621(c) interest applied.

On January 12, 1999, Tax Examining Assistant Fred Fuqua (Fuqua) responded in a letter to petitioner stating that Allen was not an authorized representative to handle petitioner's tax matters. On February 4, 1999, Fuqua sent to petitioner an additional letter notifying petitioner that interest based on tax-motivated transactions was correct but that the amount of the interest for 1982 would be adjusted because it was overassessed.

On July 12, 1999, the IRS sent to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. On

July 27, 1999, petitioner filed Form 12153, Request for a Collection Due Process Hearing (request). The request states: "The taxes were assessed based upon an information return (1065) [sic]. My deposition [sic] was agreed to many years ago. The tax assessments were not billed until recently. The interest should be abated based upon Rev. Proc. 87-42." Petitioner's request was assigned to Appeals Officer Warren Vogel (Vogel) of the Long Island Appeals Office. Vogel handled petitioner's request from August 6, 1999, through October 17, 2000. On October 17, 2000, petitioner's request was transferred to Appeals Settlement Officer Gerard Ohrtman (Ohrtman).

On October 25, 1999, John R. Serpico sent to Vogel a letter setting forth petitioner's position. The letter enclosed a Form 2848, Power of Attorney and Declaration of Representative, dated December 30, 1998, giving power of attorney to John R. Serpico, John G. Serpico, and Jeffrey S. Ehrlich (Ehrlich). In particular, the letter stated:

> His matter was settled several years prior to the
> issuance of RARs. There were other partnerships that
> went to Tax Court and the IRS failed to perform the
> ministerial act of issuing an RAR to Mr. Deverna until
> all the cases were settled. Cases that had no
> relationship to Mr. Deverna's settlement in the early
> 1990s [sic].

No documentary support for the alleged settlement was provided.

On March 27, 2001, Ohrtman sent to petitioner's representative a letter informing him that the issue petitioner

raised was not relevant for inclusion in a collection due process hearing. Ohrtman further stated that he would maintain jurisdiction over the case but that he had arranged for another Appeals officer to conduct a hearing on the interest abatement issue. He suggested that proof of the items stated in the claim should be made available when the Appeals officer made contact.

On August 1, 2001, an Appeals officer called to speak to John R. Serpico. Ehrlich stated that John R. Serpico had passed away. Ehrlich requested that the Appeals officer refrain from working on petitioner's case until the law firm could determine which of the representatives would handle petitioner's case. As a result of the destruction of the World Trade Center on September 11, 2001, both the administrative and legal files regarding the Manhattan Associates case were destroyed.

On October 25, 2001, the Appeals officer called Ehrlich because he had not yet been contacted by a member of Ehrlich's firm. Ehrlich informed the Appeals officer that the firm still had not decided who would handle petitioner's case. The Appeals officer informed Ehrlich that, if the firm did not call him back, he would make a determination on petitioner's case based on the information in the file. Ehrlich did not call the Appeals officer. The Appeals officer reviewed petitioner's case file, including the transcripts of petitioner's tax accounts.

On January 8, 2002, the IRS sent to petitioner a Full Disallowance - Final Determination disallowing petitioner's claim for interest abatement. The request for abatement was denied because the IRS "did not find any errors or delays on our part that merit abatement of interest in our review of available records and other information."

## OPINION

Under section 6404(e)(1), the Commissioner may abate the assessment of interest on any deficiency if the interest is attributable to an error or delay by an officer or employee of the IRS (acting in his official capacity) in performing a ministerial act. (Amendments to section 6404(e) in 1996 do not apply to this case because they apply only to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996.) A "ministerial act" is a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all prerequisites to the act have taken place. Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). The "mere passage of time" during a tax dispute does not establish error or delay in performing a ministerial act. Lee v. Commissioner, 113 T.C. 145, 150 (1999). The Court may order abatement where the Commissioner abuses his discretion by failing to abate interest. Sec. 6404(h)(1). In

order to prevail, a taxpayer must prove that the Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law. Lee v. Commissioner, supra at 149; Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner contends that respondent "failed to perform the ministerial act of issuing an RAR to Mr. Deverna until all cases were settled." Specifically, petitioner argues that, when he received the October 1993 letter from Lerner, the case was settled and assessments should have been made at that time. Petitioner argues that interest should be abated from the date of the October 1993 letter until the dates of the assessments in 1998. Petitioner testified at trial that he received the October 1993 letter and thought that, based on the letter's contents, the case was settled with the IRS.

The letter, however, was prepared by Lerner, a representative of some of the TEFRA partnerships, but not a representative of Manhattan Associates. It is unclear from the record whether the October 1993 letter was sent in response to a specific correspondence between respondent and Lerner. There is no evidence that petitioner did any of the things described in the letter as prerequisites to assessments against individual partners. The letter was not presented to Vogel or Ohrtman as a basis for petitioner's allegations that he had settled his case. The letter was not presented to respondent for consideration

until after preparation for trial commenced, on May 5, 2003. As a result, Vogel and Ohrtman did not review the letter on which petitioner allegedly relied and had no information regarding the settlement of petitioner's case any earlier than when documents were sent to Brown in 1995. Moreover, respondent is not bound by a letter that was not sent by the IRS.

In any event, the passage of time from October 1993 until September or October 1998 was attributable to the complexity and the extent of the Swanton coal programs and not due to a ministerial error. Sullivan testified during trial as to the complex issues and lengthy procedures involved in settling the Swanton coal programs. After lengthy settlement negotiations, in 1994, the Appeals Office prepared computations, and District Counsel prepared proposed decision documents for all partnerships involved. During 1995 and 1996, the computations and decision documents were sent to the TMPs.

Part of the responsibility for the delay falls on petitioner's representatives. Sullivan testified that Brown was generally uncooperative with the IRS, and Sullivan was forced to speak through intermediaries when dealing with Brown. Sullivan also needed to send multiple decision documents to Brown before he signed and returned the documents.

In 1997, the decision documents were sent to the Court, and the decision was entered. The decision became final in 1998, and the assessments followed.

Petitioner also argues that there was an abuse of discretion in denying petitioner's request without considering "pertinent evidence", examining "relevant factors", and articulating "a satisfactory explanation". Petitioner relies on Beagles v. Commissioner, T.C. Memo. 2003-67, in arguing that the Commissioner allowed a partial abatement of interest in a different partnership associated with the Swanton coal programs. In Beagles, however, the partner became terminally ill and the surviving spouse presented relevant documents to the Appeals officer. Here, petitioner did not provide any evidence during the administrative process to support his claim that he settled his case several years prior to the assessments. His spouse was given relief under section 6015. In any event, as in Beagles, we conclude that the delays involved in this case were not attributable to ministerial acts. Relief given administratively in different circumstances does not establish abuse of discretion. See Fargo v. Commissioner, T.C. Memo. 2004-13; Mekulsia v. Commissioner, T.C. Memo. 2003-138.

Petitioner also complains that Vogel and Ohrtman did not contact Sullivan regarding the Swanton coal programs. Petitioner and his representatives failed to contact Ohrtman

during his review of the interest abatement request and did not comply with the requests of the Appeals officer with whom Ohrtman was coordinating the case.  They did not provide the letter on which petitioner claims reliance.  Thus, the Appeals officer and Ohrtman relied on the information that remained in petitioner's file after the destruction of the World Trade Center.  Nothing in Sullivan's trial testimony supported petitioner's arguments, and the failure to contact her would not have affected the determination.

We have considered petitioner's other arguments.  They are unpersuasive.  We therefore uphold respondent's determination not to abate interest in this case.

To reflect the foregoing,

<u>An appropriate order</u>
<u>and decision will be entered</u>.