T.C. Memo. 2004-122

UNITED STATES TAX COURT

ROBERT JAMES JAFFE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11818-02.            Filed May 19, 2004.

Robert James Jaffe, pro se.

<u>Jonathan H. Sloat</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent denied in part petitioner's
request under section 6404[1] for abatement of interest on his
Federal income tax deficiencies for 1983 and 1984.  The issue for

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at the time the petition was
filed, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

decision is whether respondent's denial was an abuse of discretion.  Because we decide that (1) respondent was not required to notify petitioner of a TEFRA audit, (2) respondent is not required to offer petitioner a consistent settlement, and (3) respondent did not err or delay in performing a ministerial act, we hold that it was not an abuse of discretion.

FINDINGS OF FACT

Some of the facts are stipulated.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioner resided in Woodland Hills, California.

On his 1983 Federal income tax return, petitioner reported a loss of $14,056, attributable to his investment in a partnership called Asher & Associates (Asher).  On his 1984 Federal income tax return, petitioner reported a loss of $757 on Schedule E, Supplemental Income and Loss, attributable to Asher.  Asher was a limited partner in Wilshire West Associates (Wilshire), one of 50 coal tax shelter partnerships or joint ventures (Swanton programs) created by Norman Swanton (Mr. Swanton).[2]  In 1972, Mr.

---

[2] Wilshire and 18 other Swanton partnerships were formed after the enactment of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, secs. 402-407(a), 96 Stat. 648, and are subject to the partnership rules of TEFRA.  The remaining 30 Swanton partnerships were formed before the enactment of TEFRA.

Swanton cofounded the Swanton Corp., a Delaware corporation headquartered in New York, which promoted the Swanton programs.[3]

On July 14, 1986, respondent issued a notice of beginning of administrative proceeding (NBAP) to Asher with respect to respondent's examination of Wilshire under the audit procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, secs. 402-407(a), 96 Stat. 648. As a result of respondent's examination of the Swanton programs, respondent recommended that the Department of Justice (DOJ) criminally prosecute Mr. Swanton. During the criminal investigation, respondent suspended civil activity with respect to the Swanton programs. Eventually, the period of limitations for criminal prosecution of Mr. Swanton expired.[4]

On June 29, 1990, petitioner's income tax returns were identified by respondent and placed in "suspense" mode, pending the outcome of the Swanton program litigation. This was done in accordance with Internal Revenue Service (IRS) procedures regarding taxpayers involved with a TEFRA partnership under examination. On August 14, 1990, respondent issued Wilshire a

---

[3] For a more detailed discussion of the Swanton programs, see Kelley v. Commissioner, T.C. Memo. 1993-495.

[4] Respondent's records of the Swanton programs were destroyed in the terrorist attack on the World Trade Center on Sept. 11, 2001. We have accepted the uncontradicted testimony from an Internal Revenue Service (IRS) attorney who worked on the cases regarding certain details of the events surrounding the litigation and settlement of the Swanton programs.

notice of final partnership administrative adjustment (FPAA) with respect to its 1983 and 1984 years. On September 4, 1990, respondent issued an FPAA to Asher with respect to each of Wilshire's 1983 and 1984 years. On October 26, 1990, Wilshire filed a petition with this Court with respect to its FPAA.

In May 1991, Moira Sullivan (Ms. Sullivan), an IRS attorney, was assigned to work on the Swanton programs. In September 1991, Ms. Sullivan and counsel representing the TEFRA Swanton programs reached a basis of settlement. Negotiations regarding the terms of this settlement continued until September 1993. The final terms of settlement allowed the investors to deduct half their cash investments, and subjected them to increased interest under section 6621(c). In addition, the settlement required the consent of all the Wilshire investors. One Wilshire investor refused to consent to the settlement, and, eventually, separate closing agreements were prepared for each Wilshire partner.

Trials for the pre-TEFRA Swanton programs began in the Tax Court in 1989 and were completed in late 1992. Smith v. Commissioner, 92 T.C. 1349 (1989); Kelley v. Commissioner, T.C. Memo. 1993-495. Respondent filed his final brief in the pre-TEFRA Tax Court litigation on August 14, 1992.[5] Respondent

_____

[5] The Tax Court docket entry sheet for Kelley v. Commissioner, supra, docket No. 34982-85, shows this date. Respondent filed a notice of intent not to file a surrebuttal brief on Sept. 30, 1992.

suspended the implementation of the basis of settlement for the TEFRA Swanton programs until the litigation phase of the pre-TEFRA cases had concluded.

Asher's tax matters partner (TMP) signed a closing agreement with respect to Asher's tax liabilities on July 9, 1997. It was countersigned by respondent on December 10, 1998.

On August 20, 1999, respondent sent petitioner a letter explaining that the examination of Wilshire had been completed. Respondent also sent petitioner Form 4549A-CG, Income Tax Examination Changes (notice of adjustment), notifying petitioner that his 1983 taxable income had been adjusted by $12,542 and his 1984 income had been adjusted by $718. These adjustments resulted in deficiencies of $5,226 for 1983 and $773 for 1984. In October 1999, petitioner paid the deficiencies. On November 1, 1999, respondent assessed petitioner's deficiencies and interest and issued petitioner a letter stating that petitioner owed $23,915.94 of section 6621(c) interest for 1983. Also on November 1, 1999, respondent issued petitioner a letter stating that he owed $2,198.97 of section 6621(c) interest for 1984.

On November 8, 1999, petitioner filed Form 843, Claim for Refund and Request for Abatement, requesting abatement of the interest that had accrued from 1983 to 2000. On February 19, 2002, respondent issued a letter entitled "Partial Allowance-Final Determination" (notice of determination) to petitioner. In

the notice of determination, respondent granted interest

abatement for the period August 9, 1997 (31 days after the

closing agreement for Asher was signed by Asher's TMP), through

December 10, 1998 (the date respondent countersigned the closing

agreement), and denied petitioner's request for interest

abatement for the periods April 15, 1984, through August 9, 1997,

and December 10, 1998, through December 1, 2000.  Petitioner

timely filed a petition in this Court, requesting review of

respondent's determination to deny in part his request for

interest abatement for the period April 15, 1984, through August

1, 1999.

                          OPINION

     As applicable to the years in question, section

6404(e)(1)(B) provides that the Commissioner may abate all or any

part of an assessment of interest on any payment of certain taxes

to the extent that any error or delay in such payment is

attributable to an officer or employee of the IRS "being

erroneous or dilatory in performing a ministerial act".[6]  A

ministerial act is a procedural or mechanical act that does not

involve the exercise of judgment or discretion and that occurs

---

[6] Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error or delay in performing a ministerial or "managerial" act.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996).  That standard applies only to tax years beginning after July 30, 1996, and thus does not apply in the present case.  Id. sec. 301(c).

during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. Lee v. Commissioner, 113 T.C. 145, 150 (1999); see also sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). Abatement is available under section 6404(e) only for periods after the IRS has contacted the taxpayer in writing with respect to the deficiency or payment. Sec. 6404(e)(1).

This Court may order an abatement of interest only when the Commissioner has abused his discretion in denying a taxpayer's request to abate interest. Sec. 6404(h). To show an abuse of discretion, a taxpayer must prove that the Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

I. Respondent's Failure To Notify Petitioner

Petitioner argues that it was an abuse of discretion for respondent to fail to notify him of his 1983 and 1984 tax deficiencies until August 20, 1999. The TEFRA procedures require the Commissioner to notify certain partners of the beginning and ending of a partnership audit. Sec. 6223(a). The Commissioner is not required to give notice to a partner if the partnership has more than 100 partners and the partner has less than a 1-percent profits interest. Sec. 6223(b)(1). In the case of an indirect partner owning an interest in the partnership through a

pass-thru entity, the Commissioner is required to give notice to such partner in lieu of the pass-thru entity that would otherwise be entitled to notice, if the indirect partner's name, address, and profits interest is provided. Sec. 6223(c)(3).

The Commissioner's duty to notify under section 6223(a) is triggered only if the names, addresses, and profits interests of partners and indirect partners are provided to the IRS in one of two forms described in section 6223(c). They must be furnished either on the tax return of the partnership being audited, or in a statement to the IRS that fulfills the requirements of section 301.6223(c)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987). Sec. 6223(c). The IRS also may use other information that is available to it; however, it is not required to "search its records" to obtain information not provided in the forms required by section 6223(c). Sec. 301.6223(c)-1T(f), Temporary Proced. & Admin. Regs., supra.[7]

In this case, the IRS was required to, and did, notify Asher of the Wilshire audit. Sec. 6223(a). Wilshire's partnership return would have indicated Asher's name, address, and profits interest, and would also have indicated the number of partners that Wilshire had. Nothing in the record indicates that the Wilshire partnership return listed the individual Asher partners.

---

[7]The temporary regulations were in effect for the year in issue; the Commissioner published final regulations effective Oct. 4, 2001. Sec. 301.6223(c)-1(g), Proced. & Admin. Regs.

Although the IRS could have discovered this information using its own records, in this case it chose not to. As a result, petitioner was not entitled to receive personal notification by the IRS of the Wilshire audit. Instead, Asher's TMP was required to notify petitioner of the partnership level proceedings. Sec. 6223(g) and (h)(2).

II. <u>Consistent Settlement Issue</u>

Petitioner next argues that he is entitled to abatement of interest for the same period that the Commissioner granted abatement of interest to the taxpayer in <u>Beagles v. Commissioner</u>, T.C. Memo. 2003-67. Like petitioner, the taxpayer in <u>Beagles</u> was an indirect investor in Wilshire, through a second-tier partnership. She requested abatement of interest for the entire period between 1984 and 2000. The Appeals officer granted her request for the period May 8, 1992, through April 15, 1999, the date on which a closing agreement was signed by that second-tier partnership with respect to its 1983 and 1984 Wilshire investments.

Section 6224(c) requires the Commissioner to offer consistent settlement terms to partners with respect to the tax treatment of partnership items. Petitioner's liability for increased interest under section 6621(c) is not a "partnership item"; it is, instead, an "affected item" that relates to partnership items but must be determined at the individual level.

See also <u>Hirshfield v. United States</u>, 88 AFTR 2d 2001-6236, 2001-2 USTC par. 50,480 (S.D.N.Y. 2001); cf. <u>Sainte-Yves v. Commissioner</u>, T.C. Memo. 2002-158.  Consequently, the requirements of section 6224(c) do not apply to concessions involving interest abatement.  <u>Cinema '84 v. Commissioner</u>, 294 F.3d 432, 439-440 (2d Cir. 2002), affg. 111 T.C. 198 (1998); <u>Sainte-Yves v. Commissioner</u>, <u>supra</u>.  Therefore, section 6224 does not require respondent to offer the same terms regarding interest abatement to petitioner that were offered to Mrs. Beagles.

We review respondent's actions for abuse of discretion. Petitioner argues that respondent abused his discretion because he did not offer the same terms to him as were offered to Mrs. Beagles.  Petitioner's position is inconsistent with the principle that respondent reviews each case in light of its specific facts and circumstances.  However, if respondent's actions with respect to petitioner's settlement violated the duty of consistency, which has been recognized by this Court in other contexts, there is a potential for abuse of discretion.

As stated above, the importance of consistency of tax compromises has been previously recognized by this Court.  <u>Penn-Field Indus., Inc. v. Commissioner</u>, 74 T.C. 720, 722 (1980); <u>Fresoli v. Commissioner</u>, T.C. Memo. 1988-384; <u>Avers v. Commissioner</u>, T.C. Memo. 1988-176.  However, this duty must be balanced against the settlement discretion given to the IRS, which is "at its heart a discretion to treat similarly situated

taxpayers differently." Bunce v. United States, 28 Fed. Cl. 500, 509 (1993), affd. without published opinion 26 F.3d 138 (Fed. Cir. 1994); see also Fresoli v. Commissioner, supra. In implementing the balance, this Court requires the taxpayer to show that: (1) Other similarly situated taxpayers received more favorable settlements, and (2) the IRS' discriminatory selection of it was based on a suspect classification or any irrational or arbitrary classification. Penn-Field Indus., Inc. v. Commissioner, supra at 723; Fresoli v. Commissioner, supra. Disparate treatment of investors in the same venture is permissible if there is a rational basis for such treatment. Avers v. Commissioner, supra.

Petitioner has shown that he and Mrs. Beagles invested in similar partnerships, but not that the facts regarding abatement were in all respects similar. In addition, petitioner has not shown that he was denied the same period of interest abatement that Mrs. Beagles received because of discrimination based on an impermissible classification. Therefore, we conclude that petitioner is not entitled to interest abatement on the same terms that Mrs. Beagles was granted interest abatement.

III. Validity of the Assessment

Petitioner argues in his answering brief that respondent was barred by the period of limitations from assessing any tax

against him. He claims that respondent was required to assess any tax within 1 year from the time Asher signed the closing agreement on July 9, 1997. Ordinarily, we would not address a new issue raised on brief. However, we will briefly address it here because petitioner is a pro se taxpayer and because there is no merit to the position.

Section 6229(f)(1) provides that, with respect to items becoming nonpartnership items, "the period for assessing any tax imposed by subtitle A which is attributable to such items (or any items affected by such items) shall not expire before the date which is 1 year after the date on which the items become nonpartnership items". The partnership items of a partner become nonpartnership items when "the Secretary * * * enters into a settlement agreement with the partner with respect to such items". Sec. 6231(b)(1)(C). A settlement agreement is not entered into until both the partner and the Secretary have signed it. Therefore, the period of limitations began to run on the date respondent countersigned Asher's closing agreement, December 10, 1998, and the assessment, which was made on November 1, 1999, is valid.

IV. <u>Was There An Abuse of Discretion</u>?

We now examine the events of each relevant period in petitioner's case, which are described in the table below.

| Activity | Date |
|---|---|
| Petitioner files his 1983 return | Apr. 15, 1984 |
| Petitioner files his 1984 return | Aug. 12, 1985 |
| Pre-TEFRA test cases begin in Tax Court | 1989 |
| Ms. Sullivan is assigned to Swanton programs | May 1991 |
| Tentative basis of settlement is reached for TEFRA Swanton programs | September 1991 |
| Respondent files last brief in pre-TEFRA Swanton Tax Court litigation | Aug. 14, 1992 |
| Final agreement on terms of settlement is reached. | September 1993 |
| Asher's TMP signs closing agreement | July 9, 1997 |
| Respondent countersigns Asher's closing agreement | Dec. 10, 1998 |
| Respondent issues notice of adjustment to petitioner | Aug. 20, 1999 |

A. April 15, 1984, Through May 8, 1992

We held in Beagles v. Commissioner, T.C. Memo. 2003-67, that the Commissioner was not erroneous or dilatory in performing a ministerial act with respect to the Swanton programs between April 15, 1984, and May 8, 1992. See also Deverna v. Commissioner, T.C. Memo. 2004-80. We will briefly describe the events that support this holding.

Respondent suspended his activity with respect to the Swanton programs from April 1984 until the period of limitations for criminal prosecution of Mr. Swanton expired because Mr. Swanton was being criminally investigated by DOJ. We have previously held that the delay of a civil matter until resolution of related criminal proceedings is reasonable. Taylor v. Commissioner, 113 T.C. 206, 212 (1999), affd. 9 Fed. Appx. 700 (9th Cir. 2001). After the criminal investigation of Mr. Swanton ended, litigation in this Court for the pre-TEFRA Swanton programs continued until September 1992. See Smith v. Commissioner, 92 T.C. 1349 (1989); Kelley v. Commissioner, T.C. Memo. 1993-495. The mere passing of time during the litigation phase of a tax dispute does not establish error or delay by the Commissioner in performing a ministerial act, because decisions about how to proceed in the litigation phase of a case necessarily involve discretion. Lee v. Commissioner, 113 T.C. at 150. We therefore conclude, as this Court did in Beagles v. Commissioner, supra, that it was not an abuse of discretion for respondent to deny abatement of interest for the period April 15, 1984, through May 8, 1992.

Beagles v. Commissioner, supra, does not provide us with guidance for periods after May 8, 1992, because in that case the Commissioner granted interest abatement to the taxpayer for the

period May 8, 1992, through April 15, 1999.  We therefore must review the events that occurred after May 8, 1992, to determine whether respondent abused his discretion.

B.  May 9, 1992, Through September 1993

From May 9 to August 14, 1992, respondent was involved in litigation before this Court concerning the pre-TEFRA Swanton programs.  In accordance with our holding above, it was not an abuse of discretion for respondent to deny interest abatement for that period.  See Lee v. Commissioner, supra at 150.

After the completion of the pre-TEFRA Tax Court litigation, Ms. Sullivan negotiated with counsel for the TEFRA Swanton programs regarding the final terms of settlement until September 1993.  The TEFRA Swanton settlement work was added to Ms. Sullivan's normal caseload.  According to her testimony, because she was not assisted by any other attorney, she could not finalize the terms of settlement while briefing the pre-TEFRA cases.  The settlements could have been completed more quickly if more than one person had regularly been working on them.  Arguably, respondent made a managerial error when he assigned only one employee to handle the settlement of all of the TEFRA partnerships.  This managerial decision contributed to the delay in the resolution of petitioner's case after the overall settlement was reached.

Under current law, section 6404(e) would authorize abatement of interest during periods in which the settlement of the Wilshire case was delayed as a result of managerial errors. However, the language added to section 6404(e) permitting the abatement of interest for unreasonable errors or delays in performing managerial acts applies only to tax years beginning after July 30, 1996, and thus does not apply in the present case. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(c), 110 Stat. 1452, 1457 (1996).

For years prior to 1996, section 6404(e) allows interest abatement only for errors or delays by an officer or employee of the IRS in performing ministerial acts. Respondent's decision to assign only one attorney to the Swanton TEFRA cases was not a ministerial act, because the decision required discretion and judgment. See Mekulsia v. Commissioner, T.C. Memo. 2003-138; Beagles v. Commissioner, supra; Jacobs v. Commissioner, T.C. Memo. 2000-123; sec. 301.6404-2T(b)(2), Examples (4) and (5), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). The settlement negotiations that lasted until September 1993 also were not ministerial. Therefore, through September 1993, the delay was not due to a ministerial act. However, further analysis is necessary in order to determine whether any ministerial errors by respondent contributed to the subsequent delays in petitioner's case.

C.  October 1993 Through July 9, 1997

After the terms of settlement were resolved, it took Ms. Sullivan a number of years to send out closing agreements to the Wilshire investors because she was attempting to get the consent of all the Wilshire investors and settle on the partnership level.  At some point, Ms. Sullivan changed her mind and decided to send an individual closing agreement to each Wilshire investor.  Because Mrs. Sullivan's implementation of this settlement strategy was not ministerial, no abatement is required for the period when she was attempting to obtain unanimous consent from the Wilshire partners, including from the nonconsenting Wilshire investor.  Nothing in the record indicates when Ms. Sullivan made the decision to change the settlement strategy, or when she actually sent out the individual closing agreements.

Recently, this Court held that it was not a ministerial error for respondent to send out closing agreements for a similar Swanton partnership as late as September 9, 1995.  Deverna v. Commissioner, T.C. Memo. 2004-80.  If an even greater delay were shown, a further examination of respondent's actions after that date would be warranted.  However, petitioner has not presented any evidence, from Asher's TMP or otherwise, that indicates when respondent sent out Asher's closing agreement.  In fact, the only date in the record relevant to Asher's closing agreement is the

date Asher's TMP signed it, July 9, 1997.  Without more information about when Asher's TMP received the closing agreement, or when Ms. Sullivan sent it out, we cannot find that there was a delay by respondent in performing a ministerial act, since the additional delay in this instance was likely the result of the problem with the nonconsenting Wilshire partner's acceptance and the eventual failure of Ms. Sullivan's settlement strategy.  Therefore, it was not an abuse of discretion for respondent's Appeals officer to deny interest abatement for the period October 1993 through July 9, 1997.

D.  December 11, 1998, Through August 1, 1999

After the Asher closing agreement was countersigned, respondent adjusted petitioner's 1983 and 1984 returns according to the terms of the closing agreement and, on August 20, 1999, issued petitioner the notice of adjustment.  Respondent followed regular IRS procedures in the processing of petitioner's notice of adjustment, and there is no evidence that respondent was dilatory in performing a ministerial act during this period.  We conclude that it was not an abuse of discretion for respondent to deny petitioner's request for interest abatement for the period December 11, 1998, through August 1, 1999.

Decision will be entered

under Rule 155.